UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Vito J. Russo,

       Plaintiff,

      v.                                  Civil Action No. 1:10-cv-296

State of Vermont, Vermont
Attorney General, Tracy Shriver, Esq.,
Dan Davis, Esq., Judge Karen
Carroll, Brattleboro Police
Department, Windham County,
Town of Brattleboro, Defender
General, Public Defenders,

       Defendants.

## REPORT AND RECOMMENDATION
(Docs. 10, 11, 13, 15 and 38)

Plaintiff Vito Russo, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, claiming that he has been the victim of a malicious prosecution and wrongful incarceration. When he filed his Complaint, Russo was awaiting re-trial on charges that included aggravated assault. His first conviction was vacated after the state courts ruled that his trial attorney was ineffective. Russo argues that the success of his ineffective assistance of counsel claim "proves" that he was falsely convicted, and that there was no basis for re-trial. A recent filing suggests that Russo is no longer incarcerated.[1]

---

[1] Russo recently informed the Court that "circumstances have changed." (Doc. 38.) He now refers to his incarceration in the past tense, stating that he "was incarcerated 8 [years] 9 [months]," and has provided a mailing address that is not a prison. (*Id.*) Although his filing suggests that he is no longer incarcerated, Russo has nonetheless expressed a desire to move forward with his claims. (*Id.*)

Defendants include the State of Vermont, prosecutors, defense attorneys, municipal defendants, and a state court judge.  In four separate motions, they have each moved to dismiss.  For the reasons set forth below, I recommend that the motions to dismiss (Docs. 10, 11, 13 and 15) be GRANTED, that Russo' motion for extension of time (Doc. 38) be DENIED, and that this case be DISMISSED.

## Factual Background

The underlying facts of this case were set forth by the Vermont Supreme Court as follows:

> In 1999, the complaining witness sold petitioner a motel, and under their agreement, the complaining witness held the deed while petitioner made payments on the property.  At some point in 2002, petitioner failed to make payments and the complaining witness foreclosed on the property and evicted petitioner and his family, who had been living on the premises. Following the eviction, on the afternoon of November 17, 2002, petitioner went to the complaining witness's place of business, a car sales lot, to offer to pay $5000 for permission to reside in the motel with his family through the holidays.  The complaining witness immediately demanded that petitioner leave his property.  At this point, according to the complaining witness, petitioner pointed a gun at him, causing the complaining witness to flee the property in his plow truck.  Petitioner followed in his standard-transmission Dodge.  It was alleged that, as the two vehicles dodged in and out of traffic during a five-mile chase through Brattleboro, at around five o'clock in the afternoon, petitioner fired a bolt-action rifle from his car at the complaining witness's vehicle.  Eventually the complaining witness pulled into the Brattleboro Police Station, followed by petitioner, who was then arrested.

*In re Russo*, 991 A.2d 1073, 1075 (Vt. 2010).  At trial, the jury found that Russo had repeatedly fired the rifle at the complaining witness while driving his vehicle under the influence of alcohol.  *State v. Russo*, 864 A.2d 655, 658 (Vt. 2004).  Russo was thus convicted of aggravated assault and driving under the influence of

intoxicating liquor, as well as unlawful trespass, driving with license suspended, and four violations of his conditions of release. *Id.* at 657. The Vermont Supreme Court affirmed the conviction on direct appeal. *Id.* at 664.

Russo subsequently filed a petition for post-conviction relief (PCR) in state court, arguing ineffective assistance of counsel. Specifically, Russo argued that his trial attorney had failed to depose any witnesses prior to trial, and had failed to engage a firearms expert. *In re Russo*, 991 A.2d at 368, 371. The Superior Court granted the PCR petition, and the State appealed.

On appeal, in a 4-1 decision, the Vermont Supreme Court affirmed the lower court's ruling. Writing for the majority, Justice Skoglund stated that "[t]o prove this case, the State had to show petitioner attempted to cause bodily injury with a deadly weapon, a bolt-action rifle, by pointing it at the complaining witness and firing it at his vehicle." *Id.* The only direct evidence of the rifle being shot at the complaining witness came from that witness himself, who testified at trial that "he heard four gun shots during the car chase, saw at least one muzzle flash in his vehicle's rear-view mirror, and could tell that the flash was directed at him." *Id.* at 370. The State later presented testimony from the arresting officer, but "asked no questions of this witness regarding muzzle flashes or if one could determine directionality from any flash seen." *Id.*

On cross-examination, however, Russo's attorney "asked questions of this never-deposed witness that allowed the officer to answer with his opinion that, indeed, a flash probably could be seen from a gun fired at night and that a person

3

seeing a muzzle flash could probably tell which direction the gun was pointed . . . ." *Id.* As the majority opinion noted, this testimony was "not what the trial attorney wanted to have the jury hear." *Id.*

In the PCR hearing, Russo presented an attorney expert who criticized trial counsel's failure to test the rifle for muzzle flash. The expert also criticized counsel's failure to "call her own expert as to flash and directionality." *Id.* at 372. Even without muzzle-flash tests, the expert concluded that "defense counsel could have had an expert testify that a muzzle flash does not accurately indicate the direction of gunshots." *Id.* The expert also characterized counsel's cross-examination of the arresting officer as "'grossly ineffective.'" *Id.* The State presented its own attorney expert at the hearing, who "bluntly described the strength of the State's case as 'terrible, frankly.'" *Id.* at 375.

Based upon this record, the Vermont Supreme Court majority found that "[w]ithout any testing on muzzle flash or directionality in general, petitioner could not refute the most important – and weakest – element in the State's case: whether petitioner fired his gun at the complaining witness." *Id.* at 377. This error, compounded by various other mistakes, including counsel's failure to access the rifle for expert testing at the outset of the case, led the majority to affirm the lower court's ruling. *Id.* at 378. Until recently, Russo was held without bail pending a new trial.[2]

---

[2] In a separate case, the Vermont Supreme Court upheld the ruling on Russo's detention without bail, concluding that "[i]n light of his significant criminal history, and in light of the facts surrounding this

4

Russo's current Complaint, filed prior to his apparent release, alleges that prosecutors in Windham County were obstructing justice by pursuing a new trial. He argues that the ruling on his ineffective assistance of counsel claim demonstrated that he was falsely convicted, and that he is now entitled to damages for his wrongful incarceration. The Complaint further asks this Court to order his immediate release. Defendants in the case include prosecutors, the judge who presided over the initial criminal case, and unnamed public defenders. Russo is also suing the State of Vermont, Windham County, the Town of Brattleboro, and the Brattleboro Police Department.

## Discussion

### I. Legal Standards

Defendants submit their motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) is the vehicle for challenging the Court's subject matter jurisdiction. In defending a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. *Id.* Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits,

---

particular charge, there is great risk that if released, defendant might engage in more overtly violent and threatening conduct . . . ." *State v. Russo*, No. 2008-066, 2008 WL 2793923, at *3 (Vt. Apr. Term 2008).

5

documents, and testimony, to determine whether jurisdiction exists.  *See Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  *Id.*

The Court is required to read a *pro se* plaintiff's complaint with "special solicitude" and interpret it to raise the "strongest argument[ ] that [it] suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–76 (2d Cir. 2006).  Nonetheless,

even a *pro se* plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## II.     Judge Carroll

The Court will first consider the motion to dismiss filed by state court Judge Karen Carroll in her individual capacity. (Doc. 15.)  Judge Carroll presided over Russo's criminal trial, and sentenced him to 15 to 21 years.

The Complaint itself makes no specific reference to Judge Carroll aside from naming her in the caption.  Under "Causes of Action," Russo focuses instead on the prosecutors, claiming that "the State via the States Atty [sic] is obstructing justice – holding me w/out bail and threatens me w/ life sentence! . . .   It's my belief I was falsely convicted . . . ."  (Doc. 4 at 5.)  The Complaint does reference attachments, which include a page entitled "Justice for Russo."  (Doc. 4-1.)  Again, there is no specific reference to Judge Carroll in this document, although it does list several constitutional violations, including "abuse of discretion," "excessive bail/sentence," and "sentence enhancements." These allegations arguably apply to Judge Carroll.

Judge Carroll's motion to dismiss is based upon the well-established principle of absolute judicial immunity.  Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity exists because of the public interest in having judges who are "'at liberty to exercise their functions with independence and without fear of consequences.'" *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2005) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  Judicial immunity applies even when the judge is accused of acting

maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 12 (1976) (citing *Pierson*, 386 U.S. at 553–54). Indeed, absolute immunity applies "'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985)).

Absolute judicial immunity has two limitations. First, a judge is not immune from liability for "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, "taken in the complete absence of all jurisdiction." *Id.*

In this case, a liberal reading of the Complaint reveals only claims directed at Judge Carroll for actions taken in her role as trial judge. There is no claim that Judge Carroll harmed Russo through acts that were outside of her judicial capacity, or that she lacked jurisdiction over his criminal proceeding. Furthermore, "[i]t is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *Dove v. Fordham Univ*., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981)). The claims against Judge Carroll in her individual capacity should therefore be DISMISSED.

### III. State Defendants

A second motion to dismiss has been filed by the State of Vermont, the Vermont Attorney General, prosecutors Tracy Shriver and Dan Davis, the Defender General/Public

Defenders, and Judge Carroll in her official capacity (collectively "State Defendants"). As with Judge Carroll, the precise claims being brought against the State Defendants are difficult to discern. The body of Russo's Complaint contends broadly that prosecutors are "obstructing justice" and are threatening him with a life sentence. (Doc. 4 at 5.) The document entitled "Justice for Russo" further alleges "Police and Prosecutorial Misconduct;" "Bias/Discrimination;" "Double Jeopardy;" "Cruel and Unusual Punishment;" "Use of Perjured Testimony;" "Improper Comments;" "Inflammatory Summation;" "Due Process;" "Equal Protection;" "Insufficient Evidence;" and "Illegal Search and Seizure." Some of these allegations arguably apply to the State Defendants.

### A.   Eleventh Amendment

The State Defendants first argue that claims for damages being brought against the State of Vermont, and the individual State Defendants in their official capacities, are barred by the Eleventh Amendment. The Eleventh Amendment has long been held to prohibit federal jurisdiction over actions brought against any state that has not consented to such jurisdiction. *See Hans v. Louisiana*, 134 U.S. 1, 10 (1890). "Stated as simply as possible, the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). This protection extends to state officials, as a suit against a state official in his or her official capacity is considered a suit

against the State for Eleventh Amendment purposes.  *Hafer v. Malo*, 502 U.S. 21, 25 (1991).

Here, there has been no waiver by the State of Vermont, and no congressional abrogation.  Indeed, the Supreme Court has held that Congress did not intend to abrogate sovereign immunity by enacting Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 340–41 (1979), and the State of Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment.  *See, e.g.*, 12 V.S.A. § 5601(g).  Therefore, any federal constitutional claims being brought against the State of Vermont, and § 1983 claims for damages being brought against the other State Defendants in their official capacities, should be DISMISSED.  *See Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) ("The Eleventh Amendment likewise bars [plaintiff] from pursuing a claim for damages against the individual defendants in their official capacities.").

### B. Prosecutorial Immunity

With respect to individual capacity claims, State Defendants Shriver and Davis contend that they are shielded from liability by the doctrine of absolute prosecutorial immunity.  It is well settled that prosecutors performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity from an action for damages under § 1983.  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Burns v. Reed*, 500 U.S. 478, 493 (1991); *Robison v. Via*, 821 F.2d 913, 918 (2d Cir. 1987); *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981).  A prosecutor thus has immunity regarding the decision to commence and pursue a prosecution, even when there is an allegation of illegality.  *See, e.g., Imbler*, 424 U.S. at

431 (absolute immunity for "initiating a prosecution"); *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).  Without such immunity, "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."  *Imbler*, 424 U.S. at 424-25.

Russo claims that the prosecutors in this case were "obsessed and won't let go." (Doc. 4-1 at 1.)  He is also critical of their plea bargaining, alleging that "in one hand the State offered time served and in the other [t]hreatened him with [l]ife, holding him without bail for seeking a fair trial."  (*Id.*)  He claims that the State lacks evidence of "intent, threat or violence," and that "[t]he only possible charge would be disorderly conduct."  (*Id.*)  He further alleges, without explanation, "Use of Perjured Testimony," "Improper Comments," and "Inflammatory Summation."  (Doc. 4-1.)

All of the allegations of wrongdoing by Russo's prosecutors involve strictly prosecutorial activities, and are therefore immune from suit.  As noted previously, the decision to continue with Russo's prosecution, despite his protests that the evidence is lacking, is protected by prosecutorial immunity.  *See Imbler*, 424 U.S. at 431.  The plea bargaining process is also protected.  *See Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir.1981) ("We are satisfied that a prosecutor's activities in the plea bargaining context merit the protection of absolute immunity.  The plea negotiation is an 'essential component' of our system of criminal justice. . . . The effective negotiation of guilty pleas would be severely chilled if a prosecutor were constantly concerned with the possibility of ruinous personal liability for judgments and decisions made at this critical stage of the criminal process.").  Any comments made in the course of judicial

11

proceeding, such as a case summation, are plainly covered, as is the alleged use of perjured testimony. *See Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is . . . entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' . . . . Although such conduct would be 'reprehensible,' it does not make the prosecutor amenable to a civil suit for damages.") (quoting *Imbler*, 424 U.S. at 431 n.34).

In addition to Shriver and Davis, Russo has named the Vermont Attorney General as a defendant. He does not, however, allege that the Attorney General was personally involved in any wrongdoing, *see Farrell v. Burke*, 229 F.3d 470, 484 (2d Cir. 2006) (personal involvement required for award of damages under § 1983), or that the Attorney General's conduct went beyond the prosecutorial activities discussed above. All claims against Shriver, Davis and the Attorney General should therefore be DISMISSED.

### C. Defender General/Public Defenders

The final State Defendants named in the Complaint are the "Defender General/Public Defenders." (Doc. 4 at 1.) Any claim against these Defendants fails as a matter of law, as they are not state actors for purposes of § 1983 liability.

A claim for relief under § 1983 must allege that the defendant acted under color of a state "statute, ordinance, regulation, custom, or usage. . . ." 42 U.S.C. § 1983. With respect to court-appointed defense attorneys, and public defenders specifically, the Supreme Court has held that "the public defender does not act under color of state law for purposes of § 1983 because he 'is not acting on behalf of the State;' he is the State's adversary." *West v. Atkins*, 487 U.S. 42, 50 (1988) (quoting *Polk County v. Dodson*, 454

12

U.S. 312, 323 n.13 (1981)). To the extent that Russo may be alleging a conspiracy between the public defender and the prosecution, he offers no "special circumstances suggesting concert of action between an attorney and a state representative required to sustain such a claim." *Wingate v. Grasso*, No. 11-CV-0357(ARR), 2011 WL 835813, at *2 (E.D.N.Y. Mar. 1, 2011) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Fries v. Barnes*, 618 F.2d 988, 990-91 (2d Cir. 1980)). Accordingly, Russo's claims against his defense attorney(s) should also be DISMISSED.

In sum, Russo has failed to state a claim for relief against the State Defendants in either their official or individual capacities, and their motion to dismiss (Doc. 13) should be GRANTED.

**IV.    Municipal Defendants**

Russo has also named the Town of Brattleboro ("Town") and the Brattleboro Police Department as defendants. Russo was arrested by Brattleboro police on November 17, 2002. Aside from the arrest and related search and seizure activities, there are no other allegations of Town involvement. These defendants now move to dismiss, arguing that Russo's allegations against them are time-barred. (Doc. 10 at 7-8.)

Section 1983 does not provide a specific limitations period for filing suit. *See Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). To fill the void, courts have held that civil rights claims brought under § 1983 are subject to the forum state's "general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989); *Chin v. Bowen*, 833 F.2d 21, 23-24 (2d Cir. 1987). In Vermont, that limitations period is three years. 12 V.S.A. § 512(4).

13

Russo submitted his Complaint in December 2010. (Doc. 1.) Again, his allegations against the Town are limited to claims of police misconduct and illegal search and seizure, all of which necessarily occurred around the time of the 2002 arrest. (Doc. 4-1 at 1.) Because these alleged activities took place over eight years prior to the filing of the Complaint, Russo's § 1983 claims are untimely and should be DISMISSED.

Furthermore, Russo has failed to set forth any facts to sustain a plausible claim of municipal liability. Municipalities cannot be held liable under 42 U.S.C. § 1983 for the actions of their employees on the basis of *respondeat superior*. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Towns will only be liable for unconstitutional acts by their employees if the challenged action was performed pursuant to a municipal policy or custom that caused the plaintiff's injury. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). While a plaintiff need not necessarily identify a specific policy, and while courts may infer the existence of a policy based upon "circumstantial proof," a single incident, "'especially if it involved only actors below the policy-making level,' is insufficient to support an inference of a municipal custom or policy." *Orkins v. Dumas*, No. 1:09-cv-237-jgm, 2010 WL 4063167, at *2 (D. Vt. Oct. 15, 2010) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

The only specific allegations in this case involving Town officials are that Brattleboro Police conducted an arrest and engaged in a search and seizure. These sort of isolated events are insufficient to show a municipal policy or custom. *Id.* There is no

14

allegation of an actual policy or custom that resulted in unconstitutional conduct after Russo's arrest, and no facts to support an inference that such a policy exists. Russo's claims against the Town of Brattleboro should therefore be DISMISSED.

As to the Brattleboro Police Department itself, courts have widely held that municipal police departments are not "persons" within the meaning of Section 1983. *See, e.g., Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010); *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 825-26 (D.N.J. 1993) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not.") (citations omitted). As one court in this Circuit concluded, "[a] municipal police department is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function. Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983." *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005). Accordingly, Russo's claims against the Brattleboro Police Department should be DISMISSED.

## V.     Request for Immediate Release

With respect to Russo's request for immediate release, his recent communication with the Court suggests that the request is moot. (Doc. 38.) In any event, a lawsuit under § 1983 is not the appropriate vehicle for achieving such relief. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v.*

*Rodriguez*, 411 U.S. 475, 500 (1973).  This portion of the Complaint should therefore be DISMISSED without prejudice.

## VI.     Leave to Amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Nonetheless, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

In this case, Russo focuses on the decision by prosecutors to proceed with a retrial. For reasons discussed above, that decision is protected by prosecutorial immunity.  The flaw in Russo's claim is therefore substantive, and any effort to amend the Complaint would be futile.  The same is true of Russo's claims against Judge Carroll and the public defenders, as Judge Carroll is protected by absolute judicial immunity, and the public defenders are not state actors for purposes of § 1983.

With respect to the municipal defendants, the statute of limitations presents a clear bar, and no additional facts would affect its application.  Furthermore, the Brattleboro Police Department is not liable to suit under § 1983.  The Court should therefore find that amendment of the Complaint would be futile, and should decline to grant leave to amend.

## Conclusion

For the reasons set forth above, I recommend that Defendants motions to dismiss

(Docs. 10, 11, 13 and 14) be GRANTED. Because his claims are substantively flawed, I recommend that Russo's motion for extension of time (Doc. 38) be DENIED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this day 29th of July, 2011.


*/s/John M. Conroy*
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).